651 So.2d 313 (1995)
David ARNOLD, et al., Plaintiffs-Appellees/Appellants,
v.
TOWN OF BALL, Defendant-Appellant/Appellee.
No. 94-972.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
Rehearing Denied April 7, 1995.
*315 Thomas Taylor Townsend, Natchitoches, for David Arnold et al.
Henry H. Lemoine, Jr., Pineville, for Town of Ball.
Lauren Gay Coleman, Alexandria, for C.L. Miller et al.
Before KNOLL, SAUNDERS and AMY, JJ.
AMY, Judge.
The Town of Ball (hereafter the Town) was sued by Plaintiffs, who own property that is located in close proximity to the sewerage treatment facility owned and operated by the Town. These landowners allege that they have sustained damages because the Town clear-cut trees from a strip of undisturbed forest established as a buffer zone between their properties and the plant, and also because the Town failed to properly maintain and operate the plant.
All Plaintiffs allege that the market value of their properties has diminished because the Town clear-cut the trees from the buffer zone; however, three additional sources of harm have been asserted by various plaintiffs: the Arnold plaintiffs[1] and Mr. Lanney Williford maintain that they suffered damages from smoke, noise, and odors emitted by the plant: Mr. Williford seeks additional damages because sewer water from the plant's sprinklers has fallen onto his property; and the Miller plaintiffs[2] allege that they have suffered damages because the Town has released partially-treated sewerage into a creek that flows through their properties.

JUDGMENT OF THE TRIAL COURT
On March 14, 1994, the trial court gave written reasons for its judgment. It found that the plant was a nuisance, and it awarded David Arnold, James Mercer, Robert Gary Mercer, Debbie Mercer, Don Mercer, Debra E. Mercer, Lanney Williford, James Fountain, Greg Waldrop, and Lauri Waldrop $3,000 each for the loss of use of enjoyment of their property, mental anguish, irritation, anxiety, discomfort, and embarrassment. Shirley Miller and C.L. Miller were awarded $6,000 each. Rick Miller, DeeDee Miller, Scott Miller, and Wesley Miller were awarded $5,000 each.[3] Although plaintiffs Ronnie *316 Mercer, Linda Mercer, and Mike Wahlder owned land near the sewerage treatment facility, the trial court did not award them nuisance damages because they did not reside on their properties. Additionally, the trial court ordered that the facility be operated in a proper manner at all times.
The trial court found that cutting the trees in the buffer zone did not result in a diminution in the value of Plaintiffs' property. The court noted that although the buffer zone is not as thick and as dense as it was before, it believed that it continued to serve the purpose of camouflaging the plant. The trial court did not award attorney's fees because it noted that they are not a proper element of damages in an action for nuisance damages. Costs were assessed equally between Plaintiffs and Defendants. Expert witness fees in the amount of $200 for each of Plaintiffs' expert real estate appraisers were ordered.
On appeal, the Town contends that the trial court erred in finding it negligent for allowing sewerage to flow onto the Millers' property. The Town also maintains that it obtained approval from the Louisiana Department of Environmental Quality (hereafter DEQ) and the United States Environmental Protection Agency (hereafter EPA) before it cut the trees. It asserts that because the trees were cut in a lawful manner it is not liable to Plaintiffs for any damages that were caused by cutting the trees.
Plaintiffs also appealed, maintaining that the trial court erred in failing to award damages for the diminution in Plaintiffs' property values. The Arnold plaintiffs and Mr. Williford argue that the trial court erred in failing to award attorney's fees. All plaintiffs contend that the general damages award and the expert witness fees were inadequate and should be increased.

FACTS
In 1975, the Town retained the engineering firm of Meyer, Meyer, LaCroix and Hixson to develop plans to build a sewerage treatment plant. After the EPA issued a Finding of No Significant Impact (hereafter FONSI) in 1979, the Town received federal funding to plan the layout of the plant. The FONSI issued by the EPA concluded that the proposed construction of the sewerage plant would not result in adverse environmental consequences.
The Town began negotiations with the United States Forestry Service (hereafter Forestry Service) during the early 1980's to obtain a 120-acre site on which to locate the sewerage plant. At a public hearing held by the Town on January 27, 1981, landowners located near the proposed site expressed concerns over a possible diminution in the market value of their properties due to noise, odor, and an unsightly view. To alleviate the landowners' concerns, the Forestry Service and the Town's engineers agreed that the proposed 120-acre site would be increased to 160 acres and that the plant would be realigned so that an existing strip of forest would serve as a buffer zone between the sewerage plant and the landowners. On May 21, 1981, the EPA amended the 1979 FONSI to provide: "[t]o mitigate possible impacts ... it will be a grant condition that the application area must be surrounded by a 45.7 meter (150 foot) buffer strip of undisturbed forest on the west." (emphasis added). The Amendment to the FONSI enabled the Town to continue receiving federal funding for the project.
On February 9, 1982, a public hearing held by the Forestry Service allowed landowners who lived near the proposed site of the plant to voice their objections before it transferred the land to the Town. Mr. Clyde Todd, who conducted the meeting on behalf of the Forestry Service, testified at trial that the Forestry Service was sensitive to the concerns of the neighboring landowners and that withdrawal of their objections was necessary before his office would approve the land transfer to the Town. According to Mr. Todd and Plaintiffs, the landowners withdrew their objections in exchange for the Town's agreement to maintain the buffer zone of undisturbed forest between their land and the plant. Once the property was transferred to the Town, construction commenced. From 1986 when the plant became operational until 1992, the buffer zone of forest was not disturbed.
*317 On January 9, 1992, Mr. Robert Gary Mercer, one of the Arnold plaintiffs, observed a timber harvester placing bids on the timber in the buffer zone. On February 10, 1992, Mr. Mercer called the mayor of Ball and advised him of the Town's agreement to never disturb the timber in the buffer zone. Notwithstanding Mr. Mercer's efforts, the trees in the buffer zone were clear-cut on February 17, 1992, and the instant lawsuit resulted.
The Arnold plaintiffs and Mr. Lanney Williford claimed damages from smoke, noise, and odors emitted by the plant. At trial, Plaintiffs testified that before the trees were cut, they occasionally noticed odors or noise emanating from the sewerage plant but felt that the problem was not serious. After the trees were cut, Plaintiffs maintained that the noise and odor from the sewerage facility have interfered with the use of their properties. Mr. Williford testified that the odor from the plant prevents him from barbecuing in his yard, has forced him from his home on three or four occasions, and was present every day for a period of time. Mr. Arnold has been forced inside his house by the odor and has heard the motors of the sewerage treatment facility and dogs barking on the plant site. Mr. Mercer's testimony and his daily sewer log indicate that on several days the smell was so severe that he could not go outside. He explained that he no longer has a pool in his backyard because the odor prevented him from enjoying it. Also, he heard the plant's aerators, and he testified that smoke from pits at the sewerage treatment facility has engulfed his home and precluded him from leaving.
Plaintiffs' photographs introduced at trial depicted solid waste and old cars on the premises of the sewerage treatment facility, burnt paint cans in the pits at the facility, a dog kennel, and black smoke emanating from pits on site. Additionally, a letter from the DEQ dated December 18, 1992, cited the Town for disposing of solid waste without a permit. Mr. Paul Fett, the plant's supervisor, testified that sewerage which is allowed to lay dormant develops a severe odor. He admitted that the Town had allowed sewerage to stagnate in the pumps for 30 to 40 days.
Additionally, Mr. Williford sought damages because effluent spray from the plant was blown onto his property.
The sewerage treatment facility has 900 sprinklers, which, when they are functioning properly, release treated water into the air in a fine mist. The mist is absorbed by the ground. When the sprinklers are broken, sewer water shoots straight up out of the ground like a geyser and the wind blows this effluent stream onto Mr. Williford's property. Although Mr. Dudley Hixson, who works for the engineering firm that designed the plant, testified that broken sprinkler heads can be easily replaced, the record shows that some sprinklers remained broken for the entire summer of 1992 and that as many as 63 sprinkler heads were broken at one time. Mr. Fett testified that cows were allowed to graze in the sprinklers, increasing the chances that sprinkler heads would be broken. He also conceded that there had been fewer employees on duty than the number that was mandated in the plant's operations manual.
Additionally, the Millers sought damages because the Town has allowed partially-treated sewerage to flow through a creek that runs on their properties.
The Millers testified that effluent from the sewerage plant first flowed onto their property in either 1989 or 1990 but that they took no legal action because they assumed that it would not recur. After the discharge occurred two more times, the Millers began to record the incidents when effluent flowed onto their property. Between June of 1991 and May of 1993, green effluent flowed from the sewerage treatment facility onto the Millers' property on seven different occasions. Pictures of the creek introduced at trial corroborated the Millers' testimony and showed the presence of iridescent green fluid in the creek. Three different laboratory tests confirmed fecal coliform was present in the green fluid.
Mr. C.L. Miller testified that the smell from the raw sewerage in the creek would remain present for one to two weeks and that *318 a good rain was required to cleanse the ground. The Millers testified that they cannot allow their children to play near the creek. A letter from the EPA advised the mayor of Ball that this discharge of waste water from the sewerage plant was in violation of the Clean Water Act and the National Environmental Policy Act.

LAW AND ANALYSIS
As noted above, Plaintiffs all allege that they have suffered general damages and that the value of their property diminished. The Town is potentially liable to Plaintiffs under three different bases: Article 1, Section 4 of the Louisiana Constitution; Civil Code article 2315; and Civil Code articles 667 and 669. Yiannopoulos, Predial Servitudes, Section 51, p. 145.

INVERSE CONDEMNATION
Under Article 1, Section 4 of the Louisiana Constitution of 1974, "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner." When property is damaged by the state and an expropriation proceeding has not been instituted to compensate the landowner, he may bring an inverse condemnation action under Article 1, Section 4. Constance v. DOTD, 626 So.2d 1151, 1156 (La.1993), U.S. cert. denied, ___ U.S. ___, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994).
In Constance, the Louisiana Supreme Court held that plaintiffs must prove five elements in an inverse condemnation case: (1) that property rights are at issue; (2) that the act alleged to have caused damage was undertaken for public purposes; (3) that the acts of the government violate Civil Code articles 667 through 669; (4) that the government has engaged in excessive or abusive conduct; and (5) that their property has either been physically damaged or has suffered "special damage peculiar to the particular property." Constance, 626 So.2d at 1156-58.
The rights of ownership are use, enjoyment, and disposition of property. LSA-C.C. art. 477. Plaintiffs allege that cutting the trees has diminished the market value of their land. Since a diminution in property value affects the ability of a landowner to dispose of his property, Plaintiffs alleging injury by the cutting of the trees have satisfied the first element for recovery under Constance.
The operation and maintenance of the sewerage treatment plant clearly serves a public purpose. In the instant case, the stated use for the revenue from the timber sale was to operate and maintain the sewerage treatment facility; therefore, the second element of Constance has been satisfied.
To determine whether Plaintiffs' property was damaged under the third Constance element, the Louisiana Supreme Court has mandated that Civil Code articles 667 through 669 be considered. 626 So.2d at 1157. These articles define the scope of and limitations on the rights of ownership. Article 668 allows landowners to utilize their properties as they desire even though the use may cause inconvenience to their neighbors. Yiannopoulos, Predial Servitudes, Section 33, p. 92; Section 34, p. 95. Under Louisiana Civil Code article 667, a landowner is liable when the activities on his land cause damage to his neighbor. Hero Lands Co. v. Texaco, 310 So.2d 93, 97 (La.1975). Responsibility under Article 667 is founded on a landowner's abuse of his rights of ownership. Yiannopoulos, Section 35, p. 98; Section 39, p. 107-8. Under Article 667, a landowner is responsible for emissions and discharges that deprive his neighbor of the right to enjoy his property. Yiannopoulos, Section 58, p. 165.
To recover under Article 667, a plaintiff must prove that operations on his neighbors' land have exceeded mere inconvenience and have become a nuisance, causing him to suffer damage. Hero Lands Co., 310 So.2d at 97-98. When the use of property ceases to be merely an inconvenience and becomes a nuisance is a question of fact; therefore, a trial court's finding that the use of a property constitutes a nuisance will not be overturned on appeal absent manifest error. Hero Lands Co., 310 So.2d at 98; Acadian Heritage Realty v. City of Lafayette, 434 So.2d 182, 185 (La.App. 3d Cir.), writ denied, 440 So.2d 733 (La.1983).
*319 In this case, the trial court concluded that the sewerage plant was a nuisance. Based on the facts recited above and the entire record, we find the trial court's finding that the plant constituted a nuisance to be amply supported by the evidence.
The fourth element of the Constance test requires Plaintiffs to demonstrate that the Town has engaged in "abusive" and "excessive" conduct. In this case, the Town failed not only to properly maintain the plant and adequately staff it but also to make timely repairs. The plant was operated in violation of state and federal environmental laws. The Town cut the timber from the buffer zone, resulting in Plaintiffs' claim for loss of enjoyment due to smoke, noise and odor, and the spray being blown onto Mr. Williford's property. The Town cut the trees, despite the 1979 FONSI issued by the EPA requiring the maintenance of a 150-foot buffer strip as a condition of the federal grant. In support of our finding that the Town has engaged in "excessive" and "abusive" conduct, we stress that the plant was operated in violation of promulgated federal and state environmental statutes and regulations and that the timber was cut in violation of a specific condition attached to a federal grant.
The final requirement for recovery in an inverse condemnation case set forth in Constance is that there must be either physical damage or "special damage peculiar to the particular property." 626 So.2d at 1158. In the instant case, Plaintiffs introduced no evidence to prove that their properties had been physically damaged; therefore, "special damage peculiar to the individual who complains" must be established. 626 So.2d at 1156.
Expert testimony can be sufficient to establish that property has suffered damage because its market value has diminished. State, Department of Highways v. Moresi, 189 So.2d 292, 294 (La.App. 3d Cir.1966). In the instant case, both Plaintiffs' expert appraisers unequivocally testified that the cutting of the trees resulted in a diminution of Plaintiffs' property values. Even though the Town offered no evidence to rebut this testimony, the trial court found that Plaintiffs had failed to prove that the market value of their properties had diminished as a result of the cutting of the trees.
A trial court's decision to accept or to reject the testimony of an expert witness will not be disturbed by a reviewing court in the absence of manifest error. Lirette v. State Farm Ins. Co., 563 So.2d 850, 852-53 (La.1990); West Louisiana Petroleum Corp. v. Gunn, 428 So.2d 1289, 1291 (La.App. 3d Cir.1983). Nevertheless, the Louisiana Supreme Court has held that the manifest error standard of review does not require an appellate court "to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles." Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, while uncontradicted expert testimony is not binding on the trier of fact, uncontradicted expert testimony should be accepted as true in the absence of circumstances in the record that cast suspicion on the reliability of the testimony. West v. Bayou Vista Manor, Inc., 371 So.2d 1146, 1147 (La.1979); Morvant v. Smith, 463 So.2d 75, 77 (La.App. 3d Cir.1985). Plaintiffs' experts were uncontradicted in this case.
We also are cognizant that aerial photographs of the subject area in this case and the videotapes introduced at trial demonstrate an obvious change caused by the clear-cutting of the trees in the buffer zone. One of the appraisals introduced into evidence by Plaintiffs contains a picture taken on the Millers' property showing that the sewerage plant is clearly visible from their property after the trees were cut. Thus, on review we see that the testimony of Plaintiffs' experts is uncontradicted and objectively corroborated. Finally, after a thorough review of the record, we have found no sound reason for the trial court's rejection of the experts' testimony that Plaintiffs' property values diminished as a result of the cutting of the timber. The record is devoid of circumstances that cast any suspicion on the reliability of this testimony. Since the record reviewed in its entirety indicates that the trial court was clearly wrong in failing to find a diminution of *320 Plaintiffs' property values, we reverse this finding of fact.
We also find that the record in the instant case contains proof of damages which are "special" and "peculiar" to the property of Plaintiffs, meeting the requirements of Constance. 626 So.2d at 1156. The owners of land on the western side of the proposed sewerage plant were assured that the Town would retain the forested buffer zone; the retention of the buffer zone in that state was made a condition of the federal grant. Based on this assurance, the landowners withdrew their objections to the construction of the sewerage plant adjacent to their properties, allowing the Town to acquire the land for the plant. The testimony of Mr. Todd, the Forestry Service's representative, indicated that the landowners who lived adjacent to the proposed site could have prevented the construction of the plant at this site had they not withdrawn their objections. The 1981 Amendment to the FONSI and the map of the plans for the construction of the plant refer to a zone of undisturbed forest. It was this assurance of an undisturbed buffer zone to mitigate any adverse effects from the sewerage plant which secured the concession from Plaintiffs necessary for the completion of the project. These same facts elevate the damages to Plaintiffs' property occasioned by the clear-cutting of the buffer zone to the category of "special" and "peculiar," unlike any which may have been sustained by the public at large. Thus, we find that the cutting of the trees caused Plaintiffs to suffer special and peculiar injuries not sustained by the "neighborhood" or by the public in general.
In Constance, the Supreme Court explained that "[i]n balancing the interests of the owners of private property and the public welfare, the legislature and judiciary, as well as the framers of the Louisiana Constitution, have reasonably determined that compensation will be limited to owners of property that has been [actually] expropriated, except in limited circumstances." 626 So.2d at 1157. We believe this case to be one of those limited circumstances in which compensation is due.

RECOVERY FOR PROPERTY DAMAGES
Recovery in an inverse condemnation case under Article 1, Section 4 is limited to diminution in the market value of the property. Based on the testimony of Plaintiffs' expert appraisers, we find that cutting of the trees caused the market value of Plaintiffs' properties to decrease to 80% of the fair market value the properties had before the trees were cut. Also we find the conclusion of Mr. Mike Bordelon, one of the expert appraisers, reasonable that some of Plaintiffs' tracts were large enough that only a certain portion of the tract decreased in value. So finding, we award $19,000.00 to Robert Mercer and Debra E. Mercer; $1,246.00 to Greg Waldrop and Lauri Waldrop; $5,150.00 to James Fountain; $1,536.00 to David Arnold; $3,434.00 to Michael Wahlder; $600 to Lanney Williford; $6,701.00 to Corbett Miller and Shirley Colson Miller; and $4,274.00 to Scott Miller.
Mr. Bordelon suggested that Rick Miller be awarded $8,680.00 to relocate his trailer and other improvements. Although Rick Miller has a mobile home which is situated on part of the 4.96 acres owned by Scott Miller, he does not own any land. As stated above, only damages for the diminution of immovable property are compensable in an inverse condemnation proceeding; therefore, the costs to relocate the trailer and improvements are not recoverable under this provision, and Rick Miller is not entitled to damages under Article 1, Section 4.

RECOVERY UNDER ARTICLE 667
The Arnold plaintiffs (except for Ronnie Mercer, Linda Mercer, and Mike Wahlder), Lanney Williford, and the Miller plaintiffs contend that the trial court awarded inadequate damages for their loss of use of enjoyment of their property, mental anguish, irritation, anxiety, discomfort, and embarrassment. Ronnie Mercer, Linda Mercer and Mike Wahlder, the three property owners who do not reside on their property that adjoins the sewerage treatment plant, contend that the trial court erred in denying their claims for general damages.
*321 The fact that Article 1, Section 4 limits Plaintiffs' recovery to property damages does not preclude them from recovering damages for the loss of use of enjoyment of their property, mental anguish, irritation, anxiety, discomfort, and embarrassment under Article 667 or Article 2315. Simmons v. Board of Com'rs 624 So.2d 935, 956 (La.App. 2d Cir.1993).
In our discussion of Constance, we concluded that the plant constituted a nuisance and Plaintiffs were entitled to recover under Article 667. Therefore, the trial court properly concluded that Plaintiffs were entitled to compensation for their personal injuries.
The determination of actual damages is a question of fact; therefore, trial courts are vested with great discretion in fixing amounts, and their awards of damages will not be disturbed unless they are manifestly erroneous and no factual basis exists for them. Kolder v. State Farm Ins. Co., 520 So.2d 960, 962 (La.App. 3d Cir.1987); Bergeron v. Mike Hooks, Inc., 626 So.2d 724, 726 (La.App. 3d Cir.1993).
Before an appellate court may disturb an award of damages, the record must clearly reveal an abuse of discretion. Only after this finding is made can an award be adjusted. Alexander v. Leger, 423 So.2d 731, 733 (La.App. 3d Cir.1982), writ denied, 430 So.2d 75 (La.1983). After carefully reviewing the trial court's general damage award in light of the record, we do not find that the award to Plaintiffs was an abuse of discretion.
The trial court awarded no general damages to plaintiff landowners Ronnie Mercer, Linda Mercer, and Mike Wahlder because they did not reside on their property. In Acadian Heritage Realty, a landfill case, this court upheld an award of mental anguish damages to non-resident lessors. This court found that family members of the non-resident lessors lived near the landfill and that these non-resident plaintiffs "enjoyed a close relationship" with the resident landowners and "were intimately connected with the property and concerned about the landfill's effect on their property and family." 434 So.2d at 188. We find that no proof of such a special relationship exists between the non-resident Plaintiffs and the resident Plaintiffs. Therefore, we find no error in the trial court's refusal to award general damages to these non-resident landowners.

EXPERT WITNESS FEES
The Plaintiffs contend that the trial court erred in awarding inadequate expert witness fees for their two real estate appraisers. They further contend that the trial court erred in failing to award any fee for the testimony of their expert environmental engineer. The trial court awarded Plaintiffs $400 in costs for the expert witness fees of the real estate appraisers, $200 for Mr. Randy LaCaze and $200 for Mr. Mike Bordelon. The trial court failed to award expert witness fees to Mr. Frank Willis, who was accepted as an expert in environmental engineering. We review the award of expert witness fees under the abuse of discretion standard of review. Antis v. Miller, 613 So.2d 1034, 1037 (La.App. 3d Cir.1993).
In the instant case, the record demonstrates that an award of $200 per expert appraiser was an abuse of discretion in light of the experts' extensive preparation and testimony. Likewise, the record shows that Frank Willis performed three analyses of the Millers' creek water and testified as an expert in environmental engineering. Accordingly, we find that the trial court abused its discretion in failing to award an expert witness fee for his preparation and testimony. Therefore, we amend and set the award of expert witness fees as follows: $3,000.00 for Randy LaCaze; $3,200.00 for Mike Bordelon; and, $1,000.00 for Frank Willis.

ATTORNEY'S FEES
The Arnold plaintiffs maintain that the trial court erred in failing to award attorney's fees. Since the Miller plaintiffs have not alleged this assignment of error on appeal, we will not consider whether they are entitled to attorney's fees.
Under LSA-R.S. 13:5111, plaintiffs who establish entitlement to compensation from the government under Article 1, Section 4 for damage to their property shall be *322 awarded reasonable attorney's fees actually incurred. Mathis v. City of DeRidder, 599 So.2d 378, 393 (La.App. 3d Cir.1992). In Eubanks v. State, DOTD, 620 So.2d 954, 957 (La.App. 3d Cir.), writs denied, 629 So.2d 351 and 353 (La.1993), this court held that LSA-R.S. 13:5111 did not authorize an award of attorney's fees for recovery from the government for mental anguish. In Simmons, the plaintiffs established that they were entitled to property damages under Article 1, Section 4 of the Louisiana Constitution and mental anguish damages under Article 667. The Second Circuit concluded that LSA-R.S. 13:5111 only permitted an award of attorney's fees on the constitutional claim; therefore, it refused to award them on the mental anguish claim. 624 So.2d at 956. Pursuant to LSA-R.S. 13:5111 and the interpretative jurisprudence, we award attorney's fees and find that $7,591.50 is a reasonable amount for the inverse condemnation claim of David Arnold, Ronnie Mercer, Linda Mercer, Debbie Mercer, Don Mercer, Lanney Williford, James Fountain, Greg Waldrop, Lauri Waldrop, and Mike Wahlder.

DECREE
For the foregoing reasons, we affirm the trial court's award of general damages, reverse the trial court's denial of property damages, reverse the trial court's denial of attorney's fees in part, amend in part and reverse in part the trial court's assessment of expert witness fees, and recast the judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of DAVID ARNOLD, JAMES MERCER, ROBERT MERCER, DEBBIE MERCER, DON MERCER, DEBRA MERCER, LANNEY WILLIFORD, JAMES FOUNTAIN, GREG WALDROP AND LAURI WALDROP and against the TOWN OF BALL in the sum of THREE THOUSAND AND NO/100 ($3,000.00) DOLLARS each, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of C.L. MILLER and SHIRLEY MILLER and against the TOWN OF BALL in the sum of SIX THOUSAND AND NO/100 ($6,000.00) DOLLARS each, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of RICK MILLER, DEEDEE MILLER, SCOTT MILLER, and WESLEY MILLER and against the TOWN OF BALL in the sum of FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS each, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein against the TOWN OF BALL and in favor of the following property owners in the following amounts: NINETEEN THOUSAND AND NO/100 ($19,000.00) DOLLARS to ROBERT MERCER and DEBRA E. MERCER; TWELVE HUNDRED FORTY-SIX AND NO/100 ($1,246.00) DOLLARS to GREG WALDROP and LAURI WALDROP; FIFTY-ONE HUNDRED FIFTY AND NO/100 ($5,150.00) DOLLARS to JAMES FOUNTAIN; FIFTEEN HUNDRED THIRTY-SIX AND NO/100 ($1,536.00) DOLLARS to DAVID ARNOLD; THIRTY-FOUR HUNDRED THIRTY-FOUR AND NO/100 ($3,434.00) DOLLARS to MICHAEL WAHLDER; SIX HUNDRED AND NO/ 100 ($600.00) DOLLARS to LANNEY WILLIFORD; SIXTY-SEVEN HUNDRED ONE AND NO/100 ($6,701.00) DOLLARS to CORBETT MILLER and SHIRLEY COLSON MILLER; and FORTY-TWO HUNDRED SEVENTY-FOUR AND NO/100 ($4,274.00) DOLLARS to SCOTT MILLER, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein on the inverse condemnation claim awarding attorney's fees in favor of DAVID ARNOLD, RONNIE MERCER, DEBBIE MERCER, DON MERCER, LANNEY WILLIFORD, JAMES FOUNTAIN, GREG WALDROP, LAURI WALDROP, and MIKE WAHLDER and against the TOWN OF BALL in the sum of SEVENTY-FIVE *323 HUNDRED NINETY-ONE AND 50/100 ($7,591.50) DOLLARS, together with legal interest from the date of this opinion, until paid.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that expert witness fees be set forth hereinbelow and taxed as costs:
Randy S. LaCaze $3,000.00
Mike Bordelon $3,200.00
Frank Willis $1,000.00
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all costs of trial and this appeal are assessed to the TOWN OF BALL.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Ball Waste Water Treatment Facility be maintained in a properly operating manner at all times.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] The Arnold plaintiffs are: Mr. David Arnold; Mr. Ronnie and Mrs. Linda Mercer; Mrs. James Mercer; Mr. Robert Gary and Mrs. Debra E. Mercer; Mr. Don M. and Mrs. Debra E. Mercer; Mr. James Fountain; and Mr. Greg and Mrs. Lauri Waldrop.
[2] The Miller plaintiffs are: Mr. Corbett L. and Mrs. Shirley Colson Miller; Mr. Scott Lowell Miller; Mr. Mike Wahlder; Mr. Rick Miller; and Mr. Wesley Miller.
[3] We note in passing that the record does not indicate DeeDee Miller is a plaintiff in this case and that the Town failed to assign as error the trial court's award of damages to her. However, in light of her testimony, we will not disturb this award, because the interests of justice do not require reversal and the record clearly indicates that she is entitled to compensation. Rule 1-3, Uniform Rules, Courts of Appeal.