679 So.2d 928 (1996)
Conrad ARDOIN d/b/a Conrad's Jewelers, Plaintiff-Appellee,
v.
The STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, et al., Defendant-Appellant.
No. 96-63.
Court of Appeal of Louisiana, Third Circuit.
August 14, 1996.
Writ Denied November 15, 1996.
*930 Christopher Brent Coreil, Ville Platte, for Conrad Ardoin dba Conrad's Jewelers.
Ronald Joseph Bertrand, Bernard Lindes Knobloch Jr., Bernard Louis Malone Jr., Baton Rouge, for State of Louisiana through DOTD.
Before SAUNDERS, DECUIR, PETERS, AMY and GREMILLION, JJ.
AMY, Judge.
Defendant appeals from the trial court's award of damages and attorney's fees to the plaintiff associated with defendant's widening of U.S. Highway 167 through Ville Platte, Louisiana. For the reasons which follow, we affirm the trial court's award of damages and amend its award of attorney's fees.

DISCUSSION OF THE RECORD
Plaintiff, Conrad Ardoin, owned Conrad's Jewelers, a business located at 1321 West LaSalle Street (U.S. Highway 167) in Ville Platte, Louisiana. In 1992, defendant, State of Louisiana, Department of Transportation & Development (DOTD), began a project to widen a portion of U.S. Highway 167 which ran through Ville Platte. DOTD entered *931 into a contract with Gilchrist Construction Company, whereby Gilchrist agreed to provide all the necessary work to widen the highway. A part of U.S. Highway 167 ran across the front of Conrad's Jewelers. DOTD's construction plans for this project mandated that all work be done in the State's right of way adjacent to Conrad's Jewelers. It is undisputed that the State never formally expropriated any part of the Ardoins' property.
On September 22, 1993, Ardoin and his wife, Jolene, filed suit against DOTD seeking damages. Specifically, the Ardoins asserted in part that:
This construction by defendants has been causing and continues to cause damage to plaintiff's place of business. Specifically, the use of heavy equipment to excavate, break concrete, etc. is causing cracking and other damages to the building which houses the business known as "Conrad's Jewelers."
In addition, there are times when the equipment, materials, debris, etc. are placed in such a matter [sic] as to completely block public access to petitioner's business, which completely restricts said business from public access, resulting in a substantial loss of business revenue.
Also, the Ardoins alleged that DOTD was liable for the trespass by the placement of dirt, vehicles, equipment and debris on their property. Finally, the Ardoins requested an injunction to prevent DOTD from doing any of the above mentioned acts.
On October 14, 1993, the trial court granted the preliminary injunction enjoining DOTD, "its agents, employees, and all other persons, firms, or cooperation [sic] acting or claiming to act in its behalf from conducting further operations, improvements, or constructions, which block the entrance ways, and/or parking on plaintiff's business property, and/or firms preforming [sic] any acts, constructions or improvements which cause damage to the building which houses plaintiff's business, and the parking lot area that surrounds it." The Ardoins subsequently filed an amended petition naming Gilchrist Construction Company as a defendant. DOTD and Gilchrist both answered the Ardoins' suit denying liability.
On February 16, 1994, Gilchrist filed a peremptory exception of no cause of action asserting that loss of business revenue from blocking Ardoin's access to the highway was not compensable under Louisiana law. Eight days later, the Ardoins filed a motion to dismiss DOTD, which the trial court granted. But, on March 10, 1994, the Ardoins filed another amended petition naming DOTD, again, as a defendant. They asserted that the State took property located at the front of the store without compensation. Specifically, they alleged that the State took 3.7 feet on the west side and 1.7 feet on the east side of their property, for a total of approximately 210 square feet on the front of their property adjacent to the construction. Further, they asserted that DOTD, through its contractor, destroyed portions of their parking lot and driveway and trespassed on their property by parking and/or operating equipment on the lot. DOTD answered this amended petition and denied any liability.
Meanwhile, Gilchrist filed a third-party demand against Simms Enterprises, Inc., whom Gilchrist asserted performed the work that allegedly damaged the Ardoins' property. Gilchrist also filed an amended answer in which it asserted that it performed all work on U.S. Highway 167 according to plans and specifications furnished by DOTD. Gilchrist, therefore, insisted that DOTD alone was liable for the Ardoins' damages. Gilchrist further filed a motion to dismiss Simms, who was bankrupt, which the trial court granted. However, Gilchrist soon filed a supplemental third-party demand against Simms' general liability insurer, Audubon Insurance Company. The Ardoins reached a settlement agreement with Gilchrist and Audubon and they were both dismissed as defendants prior to trial.
A trial on the merits was held on August 14, 15, and 16, 1995 with DOTD as the remaining defendant. On August 22, 1995, the trial court rendered judgment in favor of the Ardoins and against DOTD. The trial court awarded the Ardoins the following damages:

*932
(1) The value of land appropriated: $ 318.00
(2) Severance damages: $26,000.00
(3) Past losses of business: $25,000.00
(4) Loss of future business and good
 will: $25,000.00
(5) Trespass and mental anguish: $15,000.00
(6) Damage to building of $10,127.40
 of which 50% assessed against
 DOTD: $ 5,063.70

The total damage award was $96,381.70 and the trial court ordered that legal interest run from the date of judicial demand. Also, the trial court awarded the Ardoins $35,000.00 in attorney's fees with legal interest from the date of judgment. Further, the trial court fixed the following expert witness fees: (1) Ronald Landreneau$7,410.00; (2) Daniel Poret$495.00; (3) Ronald "Red" Vidrine $600.00; (4) Charles Buller$2,900.00; (5) Roger L. Burford$4,000.00; (6) Gene Cope$5,375.00; (7) Ronnie Rabalais $4,000.00; and (8) Thomas Bradford Core $5,375.00. Finally, the trial assessed the costs of the Ardoins' experts against DOTD.
DOTD appeals from that judgment and asserts that the trial court erred in (1) finding that DOTD appropriated any property from the Ardoins; (2) awarding severance damages; (3) awarding business losses; (4) awarding damages for trespass; and (5) awarding excessive attorney's fees and expert witness fees. Finally, DOTD concedes one issue, and acknowledges in brief that it does not appeal the trial court's award of $5,063.70 for damage to the Ardoins' building.

LAW

INVERSE CONDEMNATION
DOTD's first two assignments of error specifically address the propriety of the trial court's damage awards for its activity regarding to the Ardoins' property in widening U.S. Highway 167. We will discuss them together.
The trial court held that DOTD appropriated some of the Ardoins' property without expropriation hearings and awarded them $318.00, representing the value of the land taken. This award was for a portion of concrete that was cut off and removed from the front of the Ardoins' property. Further, the trial court found that the Ardoins suffered damages because of (1) DOTD's relocation of the storm drain and the eastern driveway which caused a loss of parking spaces and (2) physical damage to the parking lot and building. It is undisputed that DOTD never expropriated any of the Ardoins' property.
Article I, Section 4 of the Louisiana Constitution provides, in pertinent part, that:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss.
A property owner may bring an inverse condemnation suit under Article I, Section 4 of our constitution when a governmental body or private entity has taken or damaged property under the powers of eminent domain without an expropriation hearing. State Through DOTD v. Chambers Inv. Co., 595 So.2d 598 (La.1992); Taylor v. State, through DOTD, 95-1318 (La.App. 3 Cir. 3/6/96); 670 So.2d 699; Arnold v. Town of Ball, 94-972 (La.App. 3 Cir. 2/1/95); 651 So.2d 313.
There is a three-prong analysis to determine whether a claimant is entitled to eminent domain compensation, namely: (1) whether property rights have been affected; (2) whether the property has been taken or damaged in a constitutional sense; and (3) whether the taking or damaging is for a public purpose. Constance v. State, DOTD, 626 So.2d 1151 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). The Louisiana Supreme Court in *933 Constance, 626 So.2d at 1156, discussed the liability of a public body in an inverse condemnation action:
The liability of a public body in such case, however, has been limited "to those instances where there is a physical taking or damage to property or a special damage peculiar to the particular property and not general damage sustained by other property similarly located." Reymond [v. State Through Dept. of Highways, 255 La. 425], 231 So.2d [375] at 383 [(1970)]. In assessing that special damage, it must be determined "whether that damage is not suffered by those in the general neighborhood that is, whether the damage is peculiar to the individual who complains." Id. [231 So.2d] at 384. Therefore, this Court has concluded that damages such as the noise of traffic, a less pleasant view, and a circuitous or more inconvenient route to petitioner's property, even when these factors resulted in an actual diminution of market value of the property, were not in themselves special damages and were not recoverable. The Reymond Court found that "[d]amages which cause discomfort, disturbance, inconvenience, and even sometimes financial loss as an ordinary and general consequence of public improvements are not compensable, and are considered damnum absque injuria [loss without injury in the legal sense]." Id. (Emphasis in original.)
In deciding whether a claimant's property has been taken or damaged, the supreme court, in Chambers, 595 So.2d 598, has mandated that the trial court consider Louisiana Civil Code articles 667 and 668:
Art. 667 Limitations on use of property
Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
Art. 668 Inconvenience to neighbor
Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.
While Article 667 provides that a property owner may not exercise his rights in such a way to cause damage to his neighbors, Article 668 requires that a property owner tolerate certain inconveniences from his neighbor's use of his property. Constance, 626 So.2d 1151. These articles are applicable when neighboring land is owned by the State. Id.
Professor A.N. Yiannopoulos, in Louisiana Civil Law Treatise, Predial Servitudes, Volume 4 (1983), § 34, pages 95-96, discusses the apparent meaning of Articles 667 and 668:
Apparently, the redactors of the Civil Code wished to establish the following principles. No one may use his property so as to cause damage to another or to interfere substantially with the enjoyment of another's property (Article 667). Landowners must necessarily be exposed to some inconveniences arising from the normal exercise of the right of ownership by a neighbor.
* * * * * *
According to civilian analysis, the right of ownership has an affirmative as well as negative side. The affirmative side is the owner's right to do with his property whatever he pleases; the negative side is the owner's right to exclude interferences with his property. [Footnote omitted.]
* * * * * *
It is apparent that Article 667 imposes a limitation on the affirmative side of the right of ownership in immovable property in favor of neighboring landowners. Although, in principle, a landowner may use and enjoy his property as he sees fit, he may not exercise his right in such a way as to cause damage to neighbors. Article 668 *934 imposes a limitation on the negative side of a neighbor's right of ownership in immovable property. Although, in principle, the neighbor may exclude any interferences with his property, he is bound to tolerate certain inconveniences resulting from the lawful use of another neighbor's property.
Finally, the trial court's factual findings in an expropriation case are not to be disturbed by an appellate court in the absence of manifest error. West Jefferson Levee District v. Coast Quality, 93-1718 (La. 5/23/94); 640 So.2d 1258, cert. denied, ___ U.S. ___, 115 S.Ct. 736, 130 L.Ed.2d 639 (1995). The Louisiana Supreme Court in Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993), announced a two-part test for the reversal of a factfinder's determinations:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
The following evidence was adduced at trial.
Conrad Ardoin testified that he was the owner of Conrad's Jewelers located at 1321 West LaSalle Street in Ville Platte. Ardoin stated that West LaSalle Street was a one-way street that ran in a westerly direction in front of his store. Ardoin testified that he had two driveways which led to his parking lot: one on the east side of his property and the other on the west side of his property. He further testified that construction began in July 1992 when the contractor began to break up his two concrete driveways in order to work on underground drainage for the project. Ardoin stated that the contractor then began to use a track hoe to break up the concrete road bed of Highway 167. He noted that the track hoe would "pound on the concrete to break it" and, as a result, the vibrations from this work "shook" his building. He stated that the contractor pounded the concrete for about four days. Ardoin testified that the vibration was so intense that merchandise would fall down in his store. Ardoin acknowledged that there were a "couple of hairline fractures" in his building, but that after the pounding the fractures "just started more enlarging and new cracks starting coming out all over." He noted that the cracks were on the inside and the outside of his building. His testimony was corroborated by Annette Duplechein, his employee, who testified that she could feel the building shake from the pounding. She further stated that the building had "cracks before" but that after the pounding finished, the cracks "enlarged substantially."
Ardoin stated that the contractor then began to build a catch basin at the location where his eastern driveway was formerly located. He testified that the contractor used a bulldozer to construct the catch basin. He also stated that the contractor operated the bulldozer on his parking lot without his permission. He admitted that he had "normal cracking" on his parking lot, however, he stated that his parking lot was not capable of withstanding the weight of a bulldozer. As a result, he testified, his parking lot has "cracks all over it" and that "the condition was much, much worse after they worked on it."
Ardoin testified that when the contractor began cutting concrete at the front of his store, he called Ronnie Landreneau to survey his property. He stated that the survey revealed that the contractor cut a strip of concrete, about 89.9 feet long, located at the front of his store. He noted that the contractor removed 1.2 feet in width on the east side and 3.1 feet in width on the west side of his property. Ardoin unequivocally testified that the State never offered to compensate him for this property.
Ardoin noted that before the construction began, he had two driveways that entered into his parking lot. He stated that he had a driveway on the east side of his property which made approximately four parking spaces available for customers. He further stated that he had a driveway on the west side of his property which made eight parking spaces available for customers. But, Ardoin testified that the State informed him that they were going to build him one twenty-four *935 foot driveway where his west driveway was formerly located. He noted that the contractor had built a catch basin where his eastern driveway was formerly located. At that point, Ardoin stated that he requested that an additional driveway be constructed. He further stated that the contractor built another driveway; however, his new eastern driveway was moved about eight to ten feet west from its old location. As a result, Ardoin testified, it was "impossible" for people to park on the east side of his parking lot because of the angle of the turn to properly park in those spaces.
Ronald Landreneau was accepted by the trial court as an expert witness in civil engineering and land surveying. He testified that he was the city engineer for Ville Platte and the parish engineer for Evangeline Parish. Also, he noted that he was a project engineer for DOTD for approximately seven years. He unequivocally testified that the project engineer for DOTD formulated the plans and specifications for each project. He further stated that the contractor, such as Gilchrist in this case, would perform the work according the DOTD's plans and specifications.
Landreneau testified that he conducted the survey of Ardoin's property which revealed that DOTD, through its contractor, had encroached upon his property by cutting a strip of concrete at the front of the jewelry store. Landreneau testified that the contractor relocated the center line of the eastern driveway approximately twenty-five feet west of where it was prior to construction. When Landreneau was asked the effect of moving this driveway to the west, he replied:
The relocation of the driveway in a westerly direction made access to those particular parking slots [on the east side of parking lot] very difficult because of the acute angle that they are against the building. When a car entered the subject's property originally from the drive as it existed prior to construction that drive was on the most westerlyrather the most easterly location of the property. It was far easier for a car to enter that particular driveway and then move fairly fluedly [sic] into a parking space that was at approximately 45 degree angle. Once the driveway was moved in a westerly direction as depicted by the red (unintelligible) area in this particular drawing, then that vehicle, once it entered the property, would have to then turn to the right in an easterly direction and then try and get back into it, which made it very difficult because of the angle that it was to the building.
Landreneau also testified that Ardoin's parking lot, near the driveways, was damaged. He also opined that the concrete in Ardoin's parking lot was not thick enough to tolerate a piece of heavy equipment such a bulldozer operating on it. He further opined that a bulldozer has sufficient weight to "break concrete."
Landreneau recommended that, in order to make access to the eastern parking spaces "far greater" than the present, it would be necessary to restore Ardoin's property to the way it was prior to construction. He then outlined his proposed plan: (1) removal of the catch basin, which is in the center of his proposed new eastern driveway, and relocate it about twenty-five feet east; (2) remove and relocate the east concrete driveway to the "most easterly property location"; (3) replace the concrete that DOTD's contractor cut in the area in the front of Conrad's Jewelry between U.S. Highway 167 and Ardoin's parking lot; and (4) repair the cracks in the parking lot. Landreneau estimated that the cost of this project would be $18,310.00.
Ronnie Rabalais, who was accepted by the trial court as an expert in contracting and construction, cost estimating, and parking lot construction, testified on behalf of DOTD. Rabalais testified that the access to the parking spaces located in the eastern side of the parking lot was the same before and after construction. However, Rabalais indicated that, if Ardoin wanted his eastern driveway at the location it was prior to construction, he had a plan that would only cost $5,000.00. Rabalais explained that he would remove the present eastern driveway and relocate it to its former location. But, Rabalais noted, there would be no need to relocate the catch basin. He stated that he would place a "roll over grate" over the top of the catch basin so *936 that automobiles could operate on the driveway over the catch basin. Finally, Rabalais opined that the cracking in Ardoin's parking lot was due to age, not construction. However, he acknowledged that heavy equipment operating on the parking lot could have "exasperated" existing cracks.
We find that the trial court was not manifestly erroneous in concluding there was an inverse condemnation of Conrad's Jewelers. The record substantiates that DOTD: (1) cut a strip of concrete about 89.9 feet long, 3.1 feet deep on the western boundary and 1.2 feet deep on the eastern boundary of Ardoin's property without compensation; (2) through its contractor engaged in activities to break concrete which caused an acceleration and worsening of cracks in Ardoin's building and parking lot; and (3) relocated Ardoin's eastern driveway to the west which made access to his eastern parking spaces very inconvenient. Ardoin's building and parking lot were actually damaged; therefore, this was more than an inconvenience that he had to put up with from the State's use of its adjoining land. See Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (La.1971). Additionally, Ardoin's property rights have been affected because of the above mentioned acts.[1] And, it is clear that the widening of a highway is for a public purpose.
Notwithstanding, DOTD maintains that the contractor performed all of the foregoing acts and, as such, DOTD should not be liable because the contractor exceeded the scope of the work as provided in its plans. DOTD asserts that it is not responsible for the activities of its contractor. This same type of argument was found to be without merit in Moorhead v. State, Department of Highways, 322 So.2d 330, 332-333 (La.App. 2 Cir.1975), where the second circuit stated:
The Department contends that if any construction work was done on plaintiff's property, it was not done by the Department, but was done by contractors, subcontractors, or utility companies over which the Department has no control and for whose activities it is not responsible. Plaintiff established she was being disturbed in the possession and enjoyment of her property by persons and activities related to the highway construction project. The Department has responsibility for and supervision and control over construction, improvements and maintenance of highways. LSAR.S. 48:21; 48:92.... The Department offered no evidence to support their contention that the activities complained of were done by parties over whom the Department had no control.... In the absence of evidence to the contrary it can only be assumed the highway construction work was being done by or at the direction of or under the control and supervision of the Department.
Further, Henry Maddox, the superintendent of Gilchrist Construction Company, unequivocally testified that DOTD provided him with the "set of plans" for the project. Also, the record substantiates that DOTD had an inspector at the construction site at all times. Therefore, we find this argument to be without merit.
Next, DOTD asserts that the trial court erred in awarding severance damages to the Ardoins. We disagree.
Article I, Section 4 of the Louisiana Constitution provides that the owner of condemned or damaged property "shall be compensated to the full extent of his loss." Therefore, under Article I, Section 4, a claimant may recover severance damages which is any depreciation in the market value of the property caused by the taking. Mathis v. City of DeRidder, 599 So.2d 378 (La. App. 3 Cir.1992). Severance damages are usually calculated as the difference between the value of the property before and after the taking. Id. The landowner in an inverse condemnation has the burden of proving severance damages by a preponderance of the evidence. Id.
Charles Buller, a real estate appraiser, testified on behalf of the Ardoins. Buller opined that Ardoin's property was valued at $1.50 per square foot. Buller further stated that DOTD cut and destroyed about 210 *937 square feet of Ardoin's concrete located at the front of his store adjacent to DOTD's right of way. Therefore, Buller valued this piece of land at $318.00. When Buller was asked to give his appraisal of the property, he replied:
I mean, that's my own experience, that any building that is sold in Ville Platte, Louisiana for the last 30 years when I was in the business got a premium if it was a going concern. Now, I appraised Mr. Conrad Ardoin's building as though he was still in the jewelry business and valued it at $65,000. I think that today, as it stands closed, that he's not gonna get $65,000. I think he's gonna get a substantial reduction. I reduced it for two reasons. I reduced it because it's not a going concern, and I reduced it because I think the parking is less accessible than before and it contributes to some severance damage. But I assessed severance damage at 40% or $26,000. Of that $26,000 I would say 10% or $6,500 is due to the parking changes that makes some of the spaces less accessible if at all usable. I think they lose two or three spaces completely. And the balance, I think, is because he's gonna sell it closed, you know. It's just gonna be different. And I think he'll lose about $19,000 because of that.
Gene Cope, a real estate appraiser, testified on behalf of DOTD. Cope testified that he appraised Ardoin's property at $58,000.00 before DOTD's construction began. But, Cope admitted that he did not take into account the fact that the interior and exterior of the building was cracked and that portions of the parking lot were cracked. Cope testified that he was advised that DOTD would not be liable for that damage; thus, he did not take into account that physical damage. Cope, however, stated that it would cost, in his opinion, about $1,300.00 to restore the concrete in front of the store that was physically removed by the contractor. Cope stated that he included this cost because "the area of the concrete and the area of the curbing had not been restored" through the date of trial. When asked whether Ardoin suffered any diminution in the value of his property because of DOTD's construction, Cope answered in part:
I concluded, in looking at the after status, assuming the conditions that exist now, that is, with the easterly driveway in it's present location, the catch basin in it's present location, the curbing and concrete surfacing removed from a very small area in the front of the property that there would be no diminution in value of the land and improvements remaining as a result of that activity. The reason for that is basically prior to this action or this activity or event, or however you want to characterize it, this was a very small property which had two driveway entrances and nine "legitimate" parking spaces. I say that based on typical parking standards that are used pretty much industry wide and the available space that was there to park and maneuver vehicles. I think that situation prevails in the after status. I think that they still have nine parking spaces, I think they still have two driveways, I think the maneuverability of the ingress and egress is slightly different than it was previously and that the easterly driveway had been moved somewhat to the west, but I did not feel like that will adversely effect the value of the property. I think the property is just as functional with that driveway in place as it previously was.
Brad Core, a real estate appraiser, also testified on behalf of DOTD. Core testified that he appraised Ardoin's property at $48,000.00 before the construction began. However, Core admitted that excluded from the "scope" of his appraisal was "any physical changes to the building improvements as a result of any possible causes from the construction or other factors." After DOTD's construction, Core stated that he appraised Ardoin's property at $47,700.00, the difference being the "loss of a small amount of concrete surfacing in the amount of 200 square feet times $1.50 per square foot, it's depreciated value." Core also noted that he was in agreement with Gene Cope's estimate of $1,300.00 to replace the concrete curbing. However, Core opined "the value of the property would not have a direct increase with the cost of doing so, making it not financially feasible." Finally, Core admitted that the *938 location of the new eastern driveway did "adversely inconvenient" customers attempting to park on the eastern side of the parking lot.
Clearly, the trial court was faced with conflicting testimony regarding the severance damages. In its reasons for judgment on this issue, the trial court stated in part that:
The court accepts Mr. Charles Buller, the expert in real estate brokerage and appraisal estimate and rationality of plaintiff's severance damages in the amount of $26,000.00 as being realistic, correct, logical, reasonable and enlightened, in other words he made good sense.
Mr. Landreneau's expert testimony concerning the defective design and modification of the driveway parking area, storm drains, etc. is also accepted. But Mr. Buller's estimate of severance damages of $26,000.00 prevails.
The testimony of Messieurs Raballias [sic], Cope and Core is rejected.
As previously stated, a trial court's determinations as to value of property and entitlement to any types of damages are factual findings which will not be disturbed by appellate court in the absence of manifest error. West Jefferson Levee District, 640 So.2d 1258. Expert testimony is sufficient to establish that the property has suffered damages because its market value has diminished. Arnold v. Town of Ball, 94-972 (La.App. 3 Cir. 2/1/95); 651 So.2d 313. Additionally, in Lirette v. State Farm Insurance Company, 563 So.2d 850, 852-853 (La.1990), the Louisiana Supreme Court discussed the standard of review when there is a conflict of expert witness testimony:
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. [Citations omitted.]
We cannot conclude that the testimonies of Charles Buller and Ronald Landreneau are patently unsound; thus, the trial court was not manifestly erroneous in awarding severance damages to the Ardoins.

BUSINESS LOSSES
DOTD asserts that the trial court erred in awarding the Ardoins business losses because it asserts that the Ardoins "never did sufficiently prove that a business loss was caused by the State's construction activities."
Article I, Section 4 of the Louisiana Constitution has been interpreted to allow compensation for economic losses. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990); State, DOTD v. McMillion Dozer Service, 93-590 (La.App. 5 Cir. 5/31/94), 639 So.2d 766, writ denied, 94-2345 (La. 11/29/94); 646 So.2d 399. A claimant must prove, by a preponderance of the evidence, that an actual loss was sustained by the business because of the taking. State, DOTD, 555 So.2d 1355.
Ardoin testified that during DOTD's construction he borrowed $30,000.00 to stay in business. He further stated that there was an "apparent" change in the number of customers and sales immediately after the construction began. He further noted that during the construction his business "severely dropped off." When asked how DOTD's construction effected his business, the following colloquy took place:
Q. When you say financial, did this work on your property attribute to the financial reasons that you are talking about?
A. Yes, sir.
Q. In what way, sir?

*939 A. Well, all the damage that was done on my property, the dirt and the mud and everything else, people wouldn't come onto my property anymore. I wasn't able to pay my obligations because of the loss of business, which I had a tremendous loss of business. It definitely, definitely made a big difference. Financially. I certainlyI retired because I would have had to borrow money just to continue in the business.
Q. To keep it going?
A. To keep it going.
Q. And you didn't want to borrow any money ...
A. I had borrowed about $30,000 already to stay in business the three years of the construction.
Q. So you borrowed money during the construction to stay in business?
A. Yes, sir.
Q. Before that time you were making a profit?
A. Yes, sir.
Q. And with your wife's income it was enough for you to live on?
A. Oh, yes. Also I didn't have no intentions of going out of business. I had a wonderful worker working for me. Even being at the age of 65 I could have continued doing business and making my $8,000 or $10,000 a year to help me financially.
Q. Did you enjoy your business?
A. Certainly I did.
Q. You like the jewelry business?
A. Sure.
Q. And you say you're retired now. Why didn't you just sell your business as a going concern?
A. I tried to. I had no takers.
Q. Was it difficult to sell an unprofitable business versus a profitable business?
A. Certainly.
* * * * * *
Q. Right now it's closed?
A. Yes, sir.
Q. Is there anything operating out of it at all?
A. No, sir.
Dan Poret, a certified public accountant, testified on behalf of the Ardoins. Poret testified that he evaluated the business of Conrad's Jewelers from 1990 through 1994 by using the Ardoins' federal and state income tax returns. Poret further testified that DOTD's road construction affected the Ardoins' business because he suffered a loss of income after the construction began. He explained that Ardoin's gross profit decreased after the construction began because Ardoin had to lower his sales prices on his merchandise in order to get customers into his store. Poret noted that Ardoin's net profit before construction (1990 and 1991) was approximately $8,700.00 to $8,800.00. However, Poret continued, that after construction (1992-1994), Ardoin's average net profit decreased to about $608.00. Poret opined that Ardoin lost about $25,645.00 during construction. Poret also stated that Ardoin's loss of future profits would be about $106,000.00. Finally, Poret testified the DOTD's construction was the cause of Ardoin's financial problems.
Dr. Roger Burford, an economist, testified on behalf of DOTD. Dr. Burford testified that he analyzed the business of Conrad's Jewelers by using the Ardoins' federal and state income tax returns from 1987 to 1993. Dr. Burford opined that in 1989, Ardoin's declining sales could be "explained entirely" by the fact that retail sales were decreasing in Evangeline Parish. Dr. Burford also stated the Ardoin's decreasing sales were not related to DOTD's construction. Dr. Burford agreed with Dan Poret that Ardoin was making about $8,700.00 in 1990 and 1991, but, he stated that, based on that number, Ardoin "could do just as well working for minimum wage." In a report dated July 24, 1995, which was introduced into evidence, Dr. Burford stated in part that:
Based on all the information discussed to this point, my conclusion is that Conrad's Jewelers has not been a viable business, at least since 1989, and that its decline after that point was simply a reflection of the general decline of retailing in Evangeline *940 Parish. Construction activity on the captioned project had nothing to do with its declining sales.
The trial court awarded the Ardoins $25,000.00 for past lost of business and $25,000.00 for loss of future business and good will. Specifically, the trial court found that the Ardoins suffered economic losses "because of the design of the highway construction in front of plaintiff's land and business, particularly the changing and modification of the driveways, the location of the storm drain, resulting in a loss of parking spaces." Additionally, the trial court accepted the testimony of Dan Poret and rejected the testimony of Dr. Roger Burford.
The trial court was faced with conflicting expert testimony on whether the Ardoins suffered a loss of business because of DOTD's construction. The trial court chose to believe Conrad Ardoin and Dan Poret. We cannot conclude that Poret's testimony was patently unsound; therefore, the trial court was not manifestly erroneous in finding that the Ardoins proved that they suffered economic losses as a result of DOTD's construction. Lirette, 563 So.2d 850.

TRESPASS AND MENTAL ANGUISH
"To constitute a trespass, there must be an unlawful physical invasion of property or possession of another." Lavergne v. Lawtell Gravity Drainage District No. 11, 562 So.2d 1013, 1017 (La.App. 3 Cir.1990). The trial court has much discretion, based upon all the facts and circumstances, in the assessment of damages arising out of trespass. M & A Farms, Ltd. v. Town of Ville Platte, 422 So.2d 708 (La.App. 3 Cir.1982).
In the present case, Conrad Ardoin unequivocally testified that during construction, the contractor placed dirt and debris on his driveways and parking lot; left the concrete catch basin on his driveway for about one month; left tie down wires on his property; parked vehicles on his driveway; and operated heavy equipment such as a bulldozer and track hoe on his parking lot and driveway without his permission. Annette Duplechein, Ardoin's employee, and his wife, Jolene, corroborated his testimony. When asked how he felt about the construction, the following colloquy took place:
A. Judge, the first time I ever had business where some days I had zero sales. Some days I had as low as $3.75 sales. PeopleI'd meet people on the street, or my wife would meet people on the street and they would say I'm not gonna go there until the construction is finished because its much too muddy and (unintelligible). And it affected me mentally, there, very bad, because I don't know exactly how to say it, but I got very distressed, very upset about it.
Q. Did you get angry when you'd call the State?
A. Certainly.
Q. How did your wife react to this also?
A. I guess she took the blunt [sic] of my anger when I got home at 5:00 o'clock in the afternoon. She would run off.
Q. Did it actually affect your relationship?
A. It affected my relationship with my wife and probably a lot of people. It sure did.
Q. Are you still angry?
A. Yes.
When Jolene was asked about the reaction that she and Conrad had when the State took a part of the parking area and deposited debris on the property, she replied:
Well, we were both upset and Conrad would come home and be very agitated and angry and it caused some marital problems. Also, he had ulcers and he was able tohe had decreased the amount of medication that he was taking for the ulcers prior to all this commotion and then he had to increase it, and so did I. Both of us. Because I became very distraught over his condition and the condition of the store and what was happening, I became very depressed and ...
Finally, Annette Duplechein testified that Conrad was "emotionally upset" when he would come to work and see the construction on his property.
*941 We conclude that the trial court did not abuse its discretion in awarding the Ardoins mental anguish damages for trespass pursuant to Louisiana Civil Code article 2315. Additionally, we conclude that the Ardoins were entitled to recover mental anguish damages under Article 667 for the reasons we stated in our discussion of inverse condemnation. Arnold, 651 So.2d 313. Therefore, we find that this assignment of error is without merit.

ATTORNEY'S FEES
DOTD asserts that the trial court awarded excessive attorney's fees to the Ardoins. We agree.
La.R.S. 13:5111(A) provides in pertinent part that:
A court of Louisiana rendering judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney's fees actually incurred because of such proceeding.
Before an appellate court will disturb an award of attorney's fees by the trial court, the record must clearly reveal that the trial court abused its much discretion in making the award. Buteau v. Leleux, 591 So.2d 1261 (La.App. 3 Cir.1991). Factors which are to be taken into consideration in determining the reasonableness of attorney's fees include: (1) the ultimate result obtained; (2) the extent and character of work performed; (3) the responsibility incurred; (4) the number of court appearances made; (5) intricacies of the facts involved; (6) the importance of the litigation; (7) legal knowledge and skill of attorneys; and (8) diligence and skill of the attorneys. See State, DOTD v. Williamson, 597 So.2d 439 (La.1992).
In the case sub judice, counsel for the Ardoins filed the petition for damages and injunction; filed three supplemental petitions; filed a motion to compel discovery; conducted discovery; prepared a pre-trial memorandum; participated in a three day trial with sixteen witnesses and several exhibits; and submitted a brief in response to DOTD's appeal. Further, we note that counsel was successful in obtaining a $96,381.70 award for the Ardoins. Also, the Ardoins' counsel has taken the responsibility of representing them for approximately three years during this litigation.
After a review of the record, we conclude that the trial court abused its much discretion in awarding the Ardoins $35,000.00 in attorney's fees. We amend the trial court's award of attorney's to $25,000.00. Finally, DOTD asserts that the trial court awarded excessive expert witness fees. However, in brief, DOTD argues that the Ardoins' expert witnesses' fees should not be awarded as a court cost based upon its assertion that we reverse the trial court's judgment. Since we are affirming the trial court, in that respect, we conclude that argument is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. However, we amend the trial court's award of attorney's fees and reduce it from $35,000.00 to $25,000.00. Costs of this appeal are assessed against DOTD.
AFFIRMED AND AMENDED IN PART.
AMY, J., dissents in part as to the amount of attorney's fees, and assigns reasons.
AMY, Judge, dissenting in part.
As author of the majority opinion, I am in accord with all that is said there, except as to the amount of attorney's fees awarded by the majority. I completely agree with the majority of this panel that the trial court abused its much discretion in awarding the Ardoins $35,000.00 in attorney's fees; however, the majority does not reduce the award sufficiently. I would award a lower amount than the majority after considering the factors set *942 forth in State, DOTD v. Williamson, 597 So.2d 439 (La.1992).
NOTES
[1] La.Civ.Code art. 477 provides, in part, that: "The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law."