JjPETERS, J.
This case involves the expropriation by the State of Louisiana, through the Department of Transportation and Development (DOTD), of immovable property located in Rapides Parish, Louisiana, and belonging to G & B Oil Products, Inc. (G & B). DOTD paid G & B $645,000.00 as just compensation for the land and improvements thereon, and the remaining issue of business losses claimed by G & B was presented to a jury for determination. The jury verdict resulted in a judgment in favor of G & B increasing the compensation previously paid by DOTD by $230,-000.00. Based on this verdict, the trial court then awarded G & B $57,500.00 as attorney fees and taxed DOTD with an additional $80,307.00 as reimbursement of expert witness fees incurred by G & B. DOTD appealed, asserting two assignments of error. G & B answered the appeal, requesting an award of additional attorney fees for the work performed on appeal.
Monroe Thompson, the principal owner of the corporation, testified that he incorporated G & B as a family-owned business in 1978 as a fuel oil supplier to construction companies. Over the years G & B began leasing or purchasing properties at which it sold gasoline and retained operators for convenience stores on the premises, and the property at issue was one of those purchases. By 1990, according to James H. Hughes, the corporation’s accountant, G & B owned or leased seven to ten such locations. The corporation purchased the property that is the subject of this expropriation action on January 11, 1982. It is located immediately south of the convergence of U.S. Highways 71, 165, and 167 in Rapides Parish, and consists of approximately 3.1 acres. Initially only a café and truck stop were located on the property, but the corporation converted the property into a convenience store location. According to Thompson, G & B was in transition from its original business of |2supplying contractors to acquiring real estate and selling gasoline and diesel fuel directly to consumers when it purchased the property. He testified that the size of the property as well as the high traffic count at the location made it an excellent location for a convenience store and truck stop. In fact, G & B attempted to operate the facility initially but eighteen months later, decided it did not wish to develop the expertise to run a convenience store operation and sought other means of operation.
In September of 1983, G & B leased the property to a private corporation which operated a convenience store and gas station on the premises, and, for approximately five years, G & B did nothing more than collect rent. From April 1987 until the property was expropriated by DOTD, the business at the location was operated by various individuals. Under the operating agreements, the various operators were responsible for the convenience store operation, and G & B retained ownership of the land and improvements and control of the gasoline and diesel fuel sales. While the convenience store operator sold the gasoline and diesel fuel, G & B supplied the gasoline and diesel for retail sales, set the price, and maintained the pumps and tanks. For his efforts in selling the gaso *1125 line and diesel fuel, the operator retained three cents per gallon sold.
On December 11, 1992, DOTD filed a petition to expropriate part of G & B’s property at this location and initially deposited $430,166.00 in the registry of the court as its estimate of just compensation owed to G & B for the taking. Later, on March 18, 1994, DOTD expropriated the remainder of the property and deposited an additional $164,834.00- into the registry of the court. By a stipulation entered into on August 31, 1998, the parties agreed that the two payments represented full compensation for the land and improvements, but G & B reserved, “the right to claim hand pursue business losses arising out of [the] expropriation....” The jury verdict of $230,000.00 represents the value placed on the business activities of G & B at the expropriated location, and that amount is disputed by DOTD in this appeal. For the following reasons, we affirm the trial court judgment in all respects.
OPINION
Relative to the right of compensation to one whose property had been taken by expropriation, La. Const, art. I, § 4 provides in pertinent part:
Property shall not be taken or damaged by the state ...' except for public purposes and with just compensation paid to the owner or into court for his benefit.... In every expropriation ... the owner shall be compensated to the full extent of his loss.
(Emphasis added).
Thus, La. Const, art. I, § 4 permits a landowner to maintain a financial condition equivalent to that which he enjoyed prior to the expropriation. State, Dep’t of Trans. & Dev. v. Dietrich, 555 So.2d 1355 (La.1990). As stated by the supreme court,
Article I, Section 4, does not specify how to fully compensate a landowner whose property is taken. Delegates to the Constitutional- Convention explained that- full compensation should include moving'costs, costs to relocate, inconvenience, and loss of profits from takings of business premises. Where economic losses suffered by a business.have been proven, damages for incidental and consequential loss must be-awarded to fully compensate the owner. Article I, Section 4, provides that the landowner should be compensated for “his loss” not merely the loss of the land.
Id. at 1358 (emphasis- added) (footnotes omitted).
The owner of expropriated property must prove by a preponderance of evidence a business loss due to the expropriation to be compensated for the loss. Id.' Additionally, the fact finder’s determination as to the amount of business loss due to an expropriation is a factual determination subject to the manifest error standard of review. Ardoin v. State, Dep’t of Transp. & Dev., 96-63 (La.App. 3 Cir. 8/14/96); 679 So.2d 928, writ denied, 96-2280 (La.11/15/96); 682 So.2d 775. DOTD admits in brief that it “does not dispute the jury’s finding that [G & B’s] business had a valúe, separate frohr the real estate, of $230,000, in December of 1992.”

Assignment of Error Number 1.

Despite this admission, in its first assignment of error, DOTD asserts that G & B is not entitled to any compensation other than the stipulated valúe of the land and improvements. Relying on the holding in State, Through Dep’t of Highways v. Constant, 369 So.2d 699 (La.1979), DOTD contends that before an owner of expropriated property can recover-for a business loss, he must prove that his land is unique in nature and location as well as indispensable to his business, and in this- case G & B failed to do so.
We disagree with DOTD’s interpretation of the decision in Constant and its application to this case. While the supreme court did require a showing in Constant that the property was unique in nature and location as well as indispensable to the landowners’ *1126 business before recovery was allowed, the type of recovery involved was the replacement cost of the loading and parking areas to the landowners’ marina which had been expropriated — not a business value loss as is the case before us. In Constant, the expropriated property had served as loading and parking areas to the landowners’ marina, both of which were vital to the marina’s operations. The extra 'elements of proof required in Constant related to the supreme court’s finding that the replacement cost approach was appropriate in that case. Further, the supreme court in Constant specifically recognized that other methods of business loss calculation would be appropriate in other cases.
The department suggests that such business losses might most appropriately have been proved- by income figures of the defendants’ [^businesses, from which a capitalized value of their economic operations might be found and from which capitalized value the percentage of (or entire) loss of their business income might be ascertained (or, rather, estimated).
This contention gave us some pause, as it did the majority of the court of appeal. Undoubtedly, evidence of this nature might have afforded a basis for determining a basis for a pecuniary award to the defendants for their business loss occasioned through the taking of the loading area, indispensable to their business activities.
Nevertheless, the landowners did in fact produce evidence of a different method by which to calculate an amount to fully compensate them for their loss, i.e., the replacement costs of a new loading area.
Id. at 704-705 (emphasis in the original). While DOTD readily admits in brief that the criteria for recovery of business losses discussed in Constant applied specifically to replacement cost and not other business losses, it argues that the elements required in Constant should be extended by analogy to such other business losses. We disagree. In fact, the supreme court in Constant declined to impose such a constriction on a landowner’s constitutional right to just compensation to the full extent of the loss, in noting that:
[T]he landowners may be compensated fully by other approaches than by awarding them the. replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landovmers’ business operations on the site from which a part is taken.
Id. at 706 (emphasis added).
In other words, where the landowner is not seeking actual replacement cost of the property expropriated, he need not prove that the property expropriated is both unique in nature and location and indispensable to his business operations. Therefore, we find the first assignment of error to be without merit.

Assignment of Error Number 2.

In its second assignment of error, DOTD argues that any award over the | ^stipulated value of the land and improvements is error because such payment placed G & B in the same economic position it enjoyed before the expropriation and that is all that is required of an expropriating body. Dietrich, 555 So.2d 1355. While admitting that G & B’s business located on the expropriated property had a value separate from the land and improvements of $230,000.00 at the time of the taking, DOTD argues that, as an owner of multiple businesses, G & B mitigated its damages by continuing the expropriated gas station’s business elsewhere. According to DOTD, G & B’s losses from the closure of its business due to the expropriation were absorbed through its other business locations, specifically those opened after the initial expropriation, and, therefore, nothing more than the market value of the property is needed to put G & *1127 B in “as good a position pecuniarily as [it] would have been had [its] property not. been taken.” Constant, 369 So.2d at 701. DOTD points to the fact that G & B opened a gas station at a new site in Alexandria in 1993, after the first expropriation took place.
We recognize that when an expropriation proceeding disrupts a business, the business has a duty to mitigate its damages. Redevelopment Agency for the City of Alexandria v. Drummond, 491 So.2d 124 (La.App. 3 Cir.), writs denied, 496 So.2d 330, 496 So.2d 332 (La.1986). However, the record clearly establishes that Thompson investigated the possibility of moving the business south below the intersection of the three highways to a point where the traffic flow would be the same. Unfortunately, the only location available would have cost the corporation $675,000.00 for the land alone. Thompson concluded that the high cost of the land together with the added construction costs madé relocation cost-prohibitive.
DOTD argues that the existence of other locations owned by G & B and its later 17expansion sufficiently mitigated its dam-, ages to preclude recovery for its business loss at the expropriated location. We find this argument without merit.' It was Thompson’s efforts to relocate within an area having the same traffic flow characteristics as the expropriated site that satisfied the obligation to mitigate damages, and not the corporation’s natural business expansion nor its operation of similar business locations. Given the rate of G & B’s growth in less than twenty years, it is clear that the corporation was not likely to halt expansion to other locations. Also, Thompson testified that G & B had no intention of closing the location subject to the expropriation. Rather, he considered that business to have a “long projected life.” If not for the expropriation, G & B would have enjoyed the benefits of its subject location in addition to all its others. The expropriation took from G & B a profitable business, the value of which was not replaced through the profits of other locations.
Lastly, DOTD questions whether an award of the value of a business is even an available method of expropriation compensation. DOTD' notes in brief that it has found no expropriation case wheréin the business owner was awarded, as compensation, the value of his business at the time of the expropriation. While Louisiana jurisprudence on the precise issue is indeed sparse, we find that the value of a business at the time of a taking is but one of various methods in which an owner may receive constitutionally guaranteed just compensation for his loss. La. Const, art. I, § 4. As previously stated,, the supreme court, in affirming an award of replacement costs to business owners, stated that “landowners may be compensated fully by other approaches.... ” Constant, 369 So.2d at 706. Also, we find that the various compensation categories suggested by the Louisiana-Constitutional Convention of 1974, as stated in Dietrich, 555 So.2d at 1358, “including moving. costs, costs tó | ^relocate, inconvenience, and loss of profits from takings of business premises” are merely illustrative. (Footnotes omitted.) Thus, we conclude that the value of the business at the time of taking is an appropriate method of evaluation of full compensation due a landowner for the fact finder to consider. In reaching that conclusion, we further find no manifest error in the jury’s determination that $230,000.00 is the appropriate value of G & B’s lost business at the expropriated location and reject DOTD’s second assignment of error.

Answer to Appeal.

. In its answer to the appeal of DOTD, G & B requests that we award it an additional amount in attorney fees for services rendered on appeal. Authority for attorney fees in an expropriation case is found in La.R.S. 48:453(E) which provides that the landowner of expropriated property may be awarded reasonable attorney fees when he is successful in in *1128 creasing the measure of compensation by litigation. However, “[s]ueh attorney fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.” Id. The trial court award of $57,500.00 is . twenty-five percent of $230,000.00 or the maximum allowed by statute. We find no authority for increasing that maximum award on appeal. Therefore, we reject G & B’s request for additional attorney fees.
DISPOSITION
We affirm the trial court judgment rendered in favor of G & B Oil Products, Inc., and against the State- of Louisiana,. Department of -Transportation and Development, in all respects. We further reject the request of G & B Oil Products, Inc., for additional attorney fees on appeal. In addition to the expert witness fees assessed by the trial court in its judgment, and, as required by La.R.S. 13:5112(A), |3we assess the State of Louisiana, Department of Transportation and Development, with additional court costs in the'-amount of $6,619.84, said amount representing the trial court cost-and cost of appeal.
AFFIRMED.