GASKINS, J.
|, This appeal concerns expropriation of property in Lincoln Parish for a state highway project. A jury found that the defendants, ' trucking companies which leased the expropriated property, had suffered no compensable business or economic losses due to the taking and construction. The defendants appeal. We affirm.
FACTS
In September 2005, the State of Louisiana, Department of Transportation and Development (DOTD), filed an expropriation suit against landowner Angela Bon-nette Biscomb and her two lessees, Rebel Transport, Inc., and Rebel Transportation Brokerage, Inc. DOTD asserted that the property sought was needed for a construction project on Highway 167 in Lincoln Parish. According to DOTD’s petition, there were no buildings located on the property at issue; the only improvements situated there were concrete parking and drives, a sign and a water lateral. DOTD asserted that just compensation for the taking would be SST^OO.[1] An order of expropriation was signed on September 21, 2005, directing DOTD to deposit $57,700 into the registry of the court. An order allowing the defendants to withdraw the money was signed in February 2006.
The defendants filed an answer on September 13, 2006, in which they asserted that just compensation would be $475,000. This sum includes a total of $275,000 for Ms. Biscomb ($75,000 for value of the part taken and $200,000 for severance damages to the remainder), $150,000 for Rebel Transport, Inc., and $50,000 for Rebel Transportation Brokerage, Inc. In a | gfirst amending answer, they raised this amount to $1,275,000. They arrived at this figure by increasing the damages to Rebel Transport, Inc., to $750,000 and the damages to Rebel Transportation Brokerage, Inc., to $250,000.
In May 2010, DOTD and Ms. Biscomb entered into a settlement whereby she received a total of $125,243.29 (the $57,700 already withdrawn, plus an additional $67,543.29). They filed a joint petition to allow Ms. Biscomb to withdraw the additional $67,543.29, which had been deposited into the registry of the court. Judgment so ordering was signed on May 28, 2010. The rights of the two remaining defendants (hereinafter collectively referred to as “Rebel”) were reserved.
A settlement was reached with Rebel whereby DOTD would pay $225,000, along *195 with permitting the continued occupancy of the property by Rebel until January 1, 2012, arid granting forgiveness of any rent due to DOTD for the occupancy of the property until that date. This settlement applied to all of Rebel’s claims except its claim for “other economic losses.” Judgment in conformity with the settlement was signed on July 27, 2011.
Trial on the issue of Rebel’s “other economic losses” began on June 27, 2011. Testifying for Rebel were its owner, Walter Troy Biscomb, and Don McGehee, Rebel’s CPA. Serving as a witness for DOTD was Michael A. Daigle, a CPA certified in financial forensics. The jury found that Rebel suffered no compensable business or economic losses due to the taking and construction. The trial court assessed court costs on or before |s June 15, 2011, against DOTD. Court costs after that date were assessed against Rebel. Judgment was signed August 26, 2011.
Appeal was takeri from this judgment by Rebel.
LAW
The owner of expropriated property must prove by a preponderance of evidence a business loss due to the expropriation to be compensated for the loss. Additionally, the fact finder’s determination as to the amount of business loss due to an expropriation is a factual determination subject to the manifest error standard of review. State, Department of Transportation and Development v. G & B Oil Products, Inc., 1999-1248 (La.App.3d Cir.6/21/00), 762 So.2d 1123, writ denied, 2000-2196 (La.10/27/00), 772 So.2d 649.
A lessee’s business losses, if proved to have been caused by the State’s taking or damaging of property, are com-pensable under the “full extent of his loss” measure of recovery. State, DOTD v. Morein, 628 So.2d 1191 (La.App. 3d Cir.1993); Packard’s Western Store, Inc. v. State, Department of Transportation and Development, 618 So.2d 1166 (La.App. 2d Cir.1993), writ denied, 629 So.2d 345 (La.1993). A claimant must prove, by a preponderance of the evidence, that an actual loss was sustained by the business because of the taking. Ardoin v. State, Department of Transportation & Development, 96-63 (La.App.3d Cir.8/14/96), 679 So.2d 928, writ denied, 96-2280 (La.11/15/96), 682 So.2d 775.
A court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong; where there is ^conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, (La.1989).
Before a factfinder’s verdict may be reversed, there must be evidence within the record such that a reasonable factual basis does not exist for the verdict, and the record establishes the verdict is manifestly erroneous. Stobart v. State Through Department of Transportation and Development, 617 So.2d 880 (La.1993). An appellate court should not upset factual findings of a trial court absent manifest error or unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); State, Department of Transportation & Development v. Schwegmann Westside Expressway, Inc., 95-1261 (La.3/1/96), 669 So.2d 1172.
It is the duty of the trier of fact to weigh credibility and to accept or reject all or part of a witness’s testimony. Marshall v. Caddo Parish School Board, 32,373 (La.App.2d Cir.10/29/99), 743 So.2d 943. Where there are two permissible views of *196 the evidence, the factfinder’s choice cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, supra.
Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. Green v. KMart Corporation, 2003-2495 (La.5/25/04), 874 So.2d 838; Wilkerson v. Wilkerson, 42,324 (La.App.2d Cir.8/15/07), 962 So.2d 1137. A factfinder may accept or reject the opinion expressed by an expert, in whole or in part. The effect |fiand weight to be given to expert testimony rests within the broad discretion of the trier of fact. Marsh v. USAgencies Casualty Insurance Company, 42,176 (La.App.2d Cir.5/16/07), 957 So.2d 901, writ denied, 2007-1286 (La.10/26/07), 966 So.2d 575.
The trier of fact is charged with determining what credibility it assigns to expert witnesses and then deciding which expert among those testifying that it finds more credible. Starr v. State ex rel. Department of Transportation and Development, 46,226 (La.App.2d Cir.6/17/11), 70 So.3d 128, writs denied, 2011-1835, 2011-1952, 2011-1625 (La.10/21/11), 73 So.3d 386-388. When findings are based on determinations regarding the credibility of witnesses, lay and expert alike, the manifest error standard demands great deference to the trier of fact’s findings. Starr v. State ex rel. Department of Transportation and Development, supra; Rosell v. ESCO, supra.
DISCUSSION
The jury as trier of fact was presented with the testimony of two CPAs who were accepted by the trial court as expert witnesses. Mr. McGehee, Rebel’s witness, began working for Rebel in 2007; he prepared tax returns and gave tax and financial advice. He admitted on cross-examination that he had no special training in business valuation or estimation or forensic accounting. Whereas Mr. McGehee was accepted as an expert in certified public accounting, Mr. Daigle, DOTD’s witness, was qualified as an expert in forensic accounting. He was engaged by DOTD to undertake an analysis of Rebel’s financial operating history to see if he 16could determine whether there was a relationship between its financial operations and the taking.
In their ■ testimony, Mr. Biscomb, the owner of Rebel, and Mr. McGehee testified that they could not relate Rebel’s post-taking financial losses to any factor but the taking. However, Mr. Daigle opined that the primary reason for the dramatic loss of revenue was the collapse of the building industry in the United States. He based this upon the fact that about 95 percent of Rebel’s business was moving building materials used in constructing houses. He concluded that Rebel suffered no real loss as a result of the taking of the property.
The figures indicate that the Rebel companies had a history of fluctuations in their gross sales and revenues even before the highway construction work. For example, gross profits for Rebel Transport went from $937,000 in 2002 to $439,000 in 2004 to $657,000 in 2009. Gross profits for Rebel Brokerage went from $281,000 in 2002 to a loss of $11,576 in 2004 to a profit of $363,000 in 2008.
Rebel assailed Mr. Daigle’s testimony on a variety of bases — he had testified for DOTD numerous times since 1983 and he had never worked for a trucking company. Additionally, Rebel pointed out that Mr. Daigle had never testified as an expert in analyzing the trucking industry. Rebel argued that the jury should have accepted the testimony of its witnesses, Mr. McGe-hee, a CPA who was intimately familiar with Rebel’s finances, and Mr. Biscomb, the owner of Rebel. However, we note *197 that the jury may have inferred a lack of impartiality on Mr. McGehee’s part due to his working ^relationship with Rebel, the factor most heavily cited by Rebel as making his testimony more credible than that of Mr. Daigle. The same is potentially true of Mr. Biscomb, whose companies would have gained financially from a jury award against DOTD. It is possible that the jury may have found Mr. Daigle’s background in forensic accounting more impressive and his lack of prior association with Rebel more indicative of an unbiased evaluation.
At any rate, it is the province of the jury to determine the credibility of a witness and to decide what weight to give testimony. In the absence of manifest error, the appellate court is required to give great deference to the jury’s decision. Where there is a conflict in the testimony, reasonable evaluations of credibility should not be disturbed on appeal. Faced with conflicting expert testimony, the jury chose to believe the testimony of DOTD’s expert. Based upon our review of the record, we are unable to say that the jury was manifestly erroneous in finding that Rebel failed to prove that it sustained compensa-ble economic losses as a result of DOTD’s taking and construction on Highway 167.
Rebel also argues that the following joint stipulation between the parties should resolve the matter in its favor:
Stipulation No. 2 — It is agreed by the parties hereto that it is in the best economic interest of Rebel Transport, Inc. and Rebel Transportation Brokerage, Inc. that as a result of the taking, and the effect of the highway design as completed, they relocate from the location they occupied on September 21, 2005.
IsDOTD maintains that the stipulation merely stated its agreement that it was in Rebel’s best interest to relocate and asserts that Rebel’s claim for relocation costs had been settled.[2] The stipulation does not state that DOTD agreed that Rebel suffered any “other economic losses,” the issue litigated in the instant trial.
We agree with DOTD that the stipulation is not dispositive of the issues presented in the matter on appeal.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellants, Rebel Transport, Inc., and Rebel Transportation Brokerage, Inc.
AFFIRMED.

. This figure included $935 for the value of the land, $7,268 for the value of the improvements, and $49,497 for damages,

. We note that during a discussion between counsel and the trial judge at the beginning of trial, DOTD counsel stated without objection: "The value of the part taken has been settled and compensation paid. Severance damages have been essentially eliminated. What remains is other economic loss.... We have settled the amount that would be paid to reestablish the business in a new location.”